66204. HARTFORD ACCIDENT & INDEMNITY COMPANY v. STRAIN POULTRY FARMS, INC. et al.

DEEN, Presiding Judge.
Paul and Barbara Bell brought suit against Strain Poultry Farms, Inc., and Loye Wilson to recover $75,000 in property and equipment damages sustained on December 20, 1979, from a fire in their chickenhouse. The Bells contracted with Strain Poultry Farms to sell them 20,000 chickens and Strain, in turn, had contracts with Wilson to catch and to haul chickens. Before the fire, Strain obtained a casualty insurance policy from Hartford which named Wilson as the

insured and "Cagles, Inc., and Strain Poultry Farms" as additional insureds. During the chicken-catching operation at the Bells' on the evening of the fire, a fire was lit by the chicken-catchers with some wood provided by Bell to keep the chicken-catchers warm while performing their duties of catching the chickens and placing them in crates to be hauled off to Gainesville by another crew employed by Wilson. Mr. Bell was not present when the work crews left so he did not sign a receipt for the work done. Mrs. Wilson testified in her deposition that when she left to drive the catchers home the fire had burned down to coals. Sometime during the night the chickenhouse caught on fire. After suit was filed on October 21, 1981, and service was obtained upon Wilson, he did nothing for several months. Strain, however, notified Hartford and asked it to defend under its policy. Hartford's claim manager responded to the request by stating: ". . . [C]overage would not extend to cover the loss and coverage was denied to our insured. Quite naturally, if our coverage would not extend to cover our insured, it surely would not extend to [Strain]." After receiving this letter, Strain filed an answer and a third-party complaint against Hartford on November 12, 1981. Wilson finally filed his answer and third-party complaint on June 21, 1982.

The policy contains an exclusion for ". . . bodily injury or property damage included within the completed operations hazard or the products hazard." The "completed operations hazard" is defined as "bodily injury and property damage arising out of operations or reliance upon a representation or warranty made any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times: (1) When all operations to be performed by or on behalf of the named insured under the contract have been completed, (2) When all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or (3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project. Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

Both Strain and Hartford filed motions for summary judgment on the issue of whether the policy applied to the Bells' claims. The

trial court granted Strain's motion, finding that "[t]he fire was started to warm Wilson's employees as a part of Wilson's operation ... The operation was not completed until the fire was out. The fire was a reasonable and expedient concomitant element of the Wilsons' operation." Hartford appeals, contending that Wilson's operations were completed before the fire and that Wilson breached the notice provision in the policy by failing to notify the company of the lawsuit. *Held:*

1. One claiming to be an additional insured under a liability policy may give the required notice and forward the papers. It makes no difference who gives notice as long as timely and reasonable notice is given and the company has actual knowledge of a pending claim or suit. *Stonewall Ins. Co. v. Farone,* 129 Ga. App. 471, 472 (199 SE2d 852) (1973). See also *State Farm Mut. Auto. Ins. Co. v. Sloan,* 150 Ga. App. 464, 467 (258 SE2d 146) (1979); *Criterion Ins. Co. v. Horton,* 140 Ga. App. 750, 751 (231 SE2d 814) (1976).

2. The appellee's argument that the exclusionary clause in the policy applies only in products liability cases and not in cases involving only a service is without merit. Such an interpretation of the clause is permissible where the completed operations hazard appears under a general heading in the policy which also refers to products, i. e., "Products — Completed Operations." 58 ALR3d 12, § 3 at 28. There is now a trend to separate the completed operations clause from the products liability clause. Id. § 2[b] at 26. This trend is shown in 11 Couch on Insurance 2d (Rev. ed.) § 44:272, where a completed operations clause identical with the definition contained in the policy is set forth, and a products hazard clause also identical with the policy definition is set forth in § 44:273. This section notes that this provision is intended to provide coverage where the defective product causes property damage. The policy in question states that it excluded coverage "to bodily injury or property damage included within the completed operations hazard *or* the products hazard." (Emphasis supplied.) Therefore, it is clear that the policy has exclusionary provisions relating to both products hazards and other types of operations, including services.

We must disagree, however, with appellant's reliance upon *Aetna Casualty & Surety Co. v. Ammons,* 125 Ga. App. 74 (186 SE2d 495) (1971) (light fixture fell six months after installation) and *Dickert v. Allstate Ins. Co.,* 121 Ga. App. 760 (175 SE2d 98) (1970) (dishwasher pipes leaked three days after installation). In both cases the products hazard exclusion was applicable and the defect was not connected in any way with the performance of a pure service, as in the instant case.

"A contract or operation is deemed completed when the work

contracted for or undertaken has been finished, even though minor details of performance may remain." 12 Couch on Insurance 2d (Rev. ed.) § 44A:24. In the instant case, the uncontroverted evidence showed that the fire was started when the chicken-catchers began work, that a fire was necessary for the workers to perform their duties during cold weather, and that the fire was not put out when the chicken-catching was completed. Therefore, the operation was not completed until the fire was extinguished. Accordingly, we find no fault with the holding of the trial court.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED APRIL 19, 1983.

*Malcolm P. Smith, N. Forrest Montet,* for appellant.
*Miles L. Gammage, J. Clinton Sumner, Jr.,* for appellees.